620          June 17, 2026          No. 552

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STEVEN JAY DECKER,
*Petitioner-Appellant,*

*v.*

Amber SUNDQUIST,
Superintendent,
Deer Ridge Correctional Institution,
*Defendant-Respondent.*

Jefferson County Circuit Court
21CV00612; A185148

En Banc

Patricia A. Sullivan, Senior Judge.

Submitted January 6, 2026.

Raymond Tindell filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Chief Judge, Ortega, Judge, Egan, Judge, Tookey, Judge, Shorr, Judge, Aoyagi, Judge, Powers, Judge, Kamins, Judge, Pagán, Judge, Joyce, Judge, Hellman, Judge, and Jacquot, Judge.*

KAMINS, J.

Reversed and remanded for proceedings consistent with this opinion.

Kamins, J., filed the opinion of the court in which Lagesen, C. J., and Ortega, Egan, Tookey, Powers, Pagán, Joyce, Hellman, and Jacquot, JJ., joined.

Aoyagi, J., dissented and filed an opinion in which Shorr, J., joined.

_____
* O'Connor, J., did not participate in the consideration or decision of this case.

**KAMINS, J.**

Petitioner appeals a judgment denying post-conviction relief. After a jury trial in the underlying criminal case, petitioner was found guilty and convicted of fifteen crimes. The jury was polled and two jurors disclosed that they had voted not guilty. Once the judgment of conviction was final, petitioner sought post-conviction relief, which was denied. In a single assignment of error, petitioner argues that the post-conviction court erred in not granting relief when the jury verdicts were nonunanimous. Reviewing for legal error and accepting all constitutionally supported findings of fact, *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015), we conclude that the post-conviction court erred in finding that the verdicts underlying petitioner's convictions were unanimous. Accordingly, we reverse and remand.

Petitioner was charged with fifteen counts of first-degree sexual abuse and sought a jury trial. At the close of petitioner's trial, the jury returned guilty verdicts on all of the fifteen counts. The trial court, following its reading of the verdict, polled the individual jurors, asking if "the verdict that [it] just read with a guilty verdict as to each of the 15 counts" was "your individual verdict." All jurors except one, Juror #10, said yes, and the following exchange occurred:

"JUROR #10:   You're asking about all 15?

"THE COURT:   Yes.

"JUROR #10:   No."

The court then explained that "[t]he count is 11 yes and one no, so it's an 11 to 1 verdict." After the court released the jurors from their service, another juror, Juror #1, let the court know that her response should have been "no" instead of "yes" when asked if the verdict was her individual verdict. That juror then explained that she found petitioner guilty on six counts but not guilty on the remaining nine counts. The court did not inquire, and the juror did not clarify, which counts were not guilty.

In order to obtain post-conviction relief under the Post-Conviction Hearing Act (PCHA), ORS 138.510

- 138.680, a petitioner must establish a denial of a constitutional right that was "(1) consequential in the criminal justice proceeding; and (2) offensive to our judicial sense of fairness." *Watkins v. Ackley*, 370 Or 604, 630, 523 P3d 86 (2022) (internal quotation marks omitted). "[W]hen it is established that a conviction was entered based on a nonunanimous verdict, the proceeding *must* be recognized as fundamentally unfair, and post-conviction relief *must* be granted." *Cam v. Pedro*, 346 Or App 635, 639, 585 P3d 1145 (2026), *rev den*, unpublished order in case number S072740 (May 21, 2026) (citing *Watkins*, 370 Or at 633) (emphases added). "Conversely, when nonunanimity is *not* established—usually because there was no jury poll—post-conviction relief is unavailable." *Id.* (emphasis in original). Petitioner bears the burden of proof, by a preponderance of the evidence, to demonstrate that his convictions were based on nonunanimous verdicts. ORS 138.620(2).

We conclude that the post-conviction court's finding that petitioner failed to meet his burden of proof that his verdicts were not unanimous is not supported by evidence in the record. *See State v. A. R. H.*, 371 Or 82, 96, 530 P3d 897 (2023) (describing principle that a reviewing court must accept a trial court's finding that a party did not meet its burden unless the record compels a different finding). That is because, on this record, there is no possible conclusion other than that at least nine of the verdicts in petitioner's case were nonunanimous. That record includes a jury poll in which one juror said that a guilty verdict was not his verdict,[1] the subsequent statement of the court that petitioner's verdict was a nonunanimous one, and the statement of a second juror that she voted "not guilty" on nine of the 15 counts.

To illustrate the role that the jury poll plays in a petitioner meeting their burden of proof to demonstrate that a nonunanimous jury instruction resulted in prejudice, we

---

[1] The parties dispute the significance of Juror #10's response to the court, and whether that indicates that all 15 guilty verdicts were nonunanimous. As we will explain, we cannot say that Juror #10's response compels a finding that all 15 verdicts were nonunanimous. Juror #1's response, on the other hand, does compel a finding that the nine verdicts on which she voted "not guilty" were, in fact, nonunanimous.

first note that it was the failure to request a jury poll that animated concerns of procedural unfairness in *State v. Dilallo*, 367 Or 340, 478 P3d 509 (2020). In that case, the defendant, on direct appeal, argued that the trial court plainly erred in providing a nonunanimous jury instruction. *Id.* at 342. At the defendant's trial, consistent with the prevailing law, the jury was instructed that it could convict him without reaching unanimity but the jury was never polled and the defendant never objected to the instruction. *Id.* at 342-43.

Given the "uncertainty" over whether the defendant's verdicts were actually nonunanimous, the court declined to exercise its discretion to address the plain error, noting that addressing the error would have the effect of "reward[ing]" a failure to comply with preservation requirements:

> "As the state notes, reversal of [the] defendant's conviction would lead to an anomaly: many defendants in cases where the jury was polled will have their convictions affirmed if the poll revealed that the verdicts were unanimous, but [the] defendant would be guaranteed a reversal, regardless of whether the jury reached a unanimous verdict, because of a deficiency in the record that could have been avoided if he had objected. As a result, [the] defendant's failure to comply with the preservation requirement would not only be excused, it would be rewarded."

*Id.* at 348; *cf. State v. Ulery*, 366 Or 500, 504, 464 P3d 1123 (2020) (exercising discretion to review and correct similar plain error when the defendant had requested a jury poll that revealed several nonunanimous verdicts); *see also Dilallo*, 367 Or at 347-48 ("In *Ulery*, we knew that the jury's verdicts had been nonunanimous, which is why we concluded that the error was a grave one.").

In *Mandell v. Miller*, 326 Or App 807, 533 P3d 815, *rev den*, 371 Or 476 (2023), we addressed the impact of a petitioner's failure to obtain a jury poll in the context of post-conviction relief. *Id.* at 811. In that case, the petitioner provided general statistical evidence as to the probability that he was convicted by a nonunanimous jury. *Id.* at 810. We concluded that the petitioner had not met his burden to prove that the nonunanimous jury instruction was consequential to his conviction, because there was nothing in the

record to suggest that the verdicts were actually nonunanimous, such as a "dispositive" jury poll. *Id.* Echoing *Dilallo*, we declined to create an "anomaly" where a petitioner who had not requested a jury poll would be in a better position than one who had. *Id.* at 811.

More recently, in *Cam*, the petitioner was convicted based on 54 guilty verdicts. 346 Or App at 637. The petitioner also received one acquittal, and the jury was hung on one count. *Id.* The sole piece of evidence in the record that at least one of the petitioner's verdicts was nonunanimous was the fact that "after receiving the verdicts, the trial court asked the presiding juror whether the verdicts were unanimous or nonunanimous. The presiding juror answered, 'Both.' The jurors were not polled, nor was any other inquiry made into which of the verdicts was or were nonunanimous." *Id.* at 639. We concluded that, on that record, the post-conviction court did not err in finding that the petitioner did not meet his burden to prove that any of his convictions stemmed from a nonunanimous verdict:

> "Given that record, it is likely that at least one of the jury's 54 guilty verdicts was nonunanimous—although it is not absolutely certain, as it is possible that all of the guilty verdicts were unanimous and that only the acquittal was nonunanimous."

*Id.* at 640. Thus, in *Cam*, the petitioner could not establish, by a preponderance of the evidence, that even a single one of his convictions stemmed from a nonunanimous verdict, largely because the jury was not polled. *Id.* (recognizing that "[i]t would be inequitable for [the] petitioner to fare better for having not requested a jury poll than if he had requested one" and thus "[t]he problem for [the] petitioner is that there is no way to know how many of the verdicts were nonunanimous or, more importantly, *which one(s)*" (emphasis in original)); *see also Mandell*, 326 Or App at 810 (affirming the denial of post-conviction relief when the only evidence of nonunanimity was general statistical information, as opposed to evidence about "the verdicts in [the] petitioner's case").

Petitioner here has that "dispositive" evidence to meet his burden of proof. Unlike in *Cam*, *Mandell*, and

*Dilallo*, it *is* "absolutely certain," *Cam*, 346 Or App at
640, that at least nine of petitioner's guilty verdicts were
nonunanimous: the presiding juror said that she voted
"not guilty" on nine counts after a jury poll that revealed a
nonunanimous jury. Our conclusion is thus consistent with
*Cam*—where no jury poll and an ambiguous statement from
a juror was insufficient to meet the petitioner's burden[2]—
and *Mandell*—where no jury poll and generic statistical
information was similarly insufficient. The evidence here
established "[a] constitutional violation" of such a "magni-
tude" that rendered the convictions void. *Watkins*, 370 Or at
633 ("[A] petitioner who establishes a violation of that sort
is entitled to relief, because ORS 138.530(1)(a) provides that
a post-conviction court 'shall' grant relief for 'a substantial
denial' of [the] petitioner's constitutional rights 'which * * *
rendered the conviction void.'" (Ellipses in original.)).

The dissent raises a concern with this approach:
that our approach is "inconsistent" with the PCHA's textual
focus on a "conviction," ORS 138.530(1)(a). 350 Or App at
630 (Aoyagi, J., dissenting).

We do not read the post-conviction relief statute as
narrowly as the dissent. As a textual matter, we disagree
that the language of 138.530(1)(a) reflects a legislative
intent to focus on an individual conviction rather than the
proceedings giving rise to it. ORS 138.530(1) provides:

"Post-conviction relief pursuant to ORS 138.510 to
138.680 shall be granted by the court when one or more of
the following grounds is established by the petitioner:

"(a)   A substantial denial in the proceedings resulting
in petitioner's conviction, or in the appellate review thereof,
of petitioner's rights under the Constitution of the United
States, or under the Constitution of the State of Oregon, or
both, and which denial rendered the conviction void.

"(b)   Lack of jurisdiction of the court to impose the
judgment rendered upon petitioner's conviction.

"(c)   Sentence in excess of, or otherwise not in accor-
dance with, the sentence authorized by law for the crime

---

[2] We acknowledge that our understanding of *Cam* differs from the dissent's.
*Cam,* however, as we understand it and as set forth above, is consistent with our
opinion today and need not be overruled.

of which petitioner was convicted; or unconstitutionality of such sentence.

"(d)   Unconstitutionality of the statute making criminal the acts for which petitioner was convicted."

All four of the statutory grounds for relief under ORS 138.530(1) use the same terminology, referencing a "conviction", or being "convicted." Given that fact, the focus in (1)(a) appears to us to be on a substantial denial of petitioner's rights in the *proceedings*—as distinct from, in the other subsections, a lack of jurisdiction to impose the judgment, ORS 138.530(1)(b), an error in the sentence, ORS 138.530(1)(c), or unconstitutionality of the statute, ORS 138.530(1)(d)—that render the conviction void. The use of the word "conviction" or "convicted" in all four grounds for relief reflects nothing more than the reality of timing: claims for post-conviction relief will be brought *after* a conviction is entered. *See* ORS 138.540(1) ("Except as otherwise provided in ORS 138.510 to 138.680, a petition pursuant to [the PCHA] shall be the exclusive means, after judgment rendered upon a conviction for a crime, for challenging the lawfulness of such judgment or the proceedings upon which it is based." (Emphasis added.)). Indeed, had the legislature wanted to emphasize the significance of each individual conviction, it likely would not have used the singular term "conviction" to apply to all cases, even those with multiple convictions. *See, e.g.*, ORS 138.257(4)(a)(A) (giving specific instructions relating to remanding "a case involving multiple *convictions*" on direct appeal (emphasis added)). The focus of (1)(a) is the substantial denial of constitutional rights, then, and not any individual conviction.[3]

        Having determined that the post-conviction court erred, the next question is the proper disposition, in light of such an error. In this instance, we are mindful of the post-conviction court's broad discretion to craft remedies that are

_____

[3] To the extent ORS 138.530(1)(a) focuses on a "conviction," it is the "substantial denial" of rights that must render the conviction "void." The term "void" in ORS 138.530 means that, "'*unless appropriate relief is granted* [,] the denial of petitioner's rights that occurred *** will render his conviction void.'" *Hinton v. Hill,* 342 Or 222, 228, 149 P3d 1205 (2006) (quoting *Shipman v. Gladden*, 253 Or 192, 203, 453 P2d 921 (1969)) (emphasis and alterations in *Hinton*). If anything, that underscores the importance of tailoring the remedy ("appropriate relief") to the substantial denial of rights, as opposed to any individual conviction.

"proper and just." ORS 138.520;[4] *Hinton v. Hill*, 342 Or 222, 231, 149 P3d 1205 (2006) (a post-conviction court "has broad authority to fashion a remedy to correct the actual prejudice suffered by a criminal defendant"); *Lujan v. Myrick*, 288 Or App 763, 768, 407 P3d 966 (2017) (remanding to the post-conviction court to allow it to fashion relief "that cures [the] petitioner's actual prejudice"). Thus, we reverse and remand with directions to the post-conviction court to fashion an appropriate remedy that is "proper and just" and that cures the harm caused by the fact that at least nine of petitioner's convictions were based on nonunanimous verdicts.

The dissent contends that granting such discretion on remand fails to give sufficient guidance to trial courts on the question of remedy on standalone *Ramos* cases, which could lead to inconsistent results. 350 Or App at 630 (Aoyagi, J., dissenting). Our role as an error-correcting intermediate appellate court on review, however, is to identify and correct error. We do not usurp the role of lower courts to craft a "just and proper" remedy in the first instance. *See Evans v. Nooth*, 318 Or App 162, 178, 506 P3d 469 (2022) (after determining that the post-conviction court erred in denying the petitioner's inadequate-assistance claim, "we reverse and remand the post-conviction court's judgment and leave it to that court to fashion an appropriate remedy in the first instance"). As noted, particularly in post-conviction cases, we have recognized that trial courts have "broad discretion in selecting relief that will fulfill the remedial purpose of the post-conviction statutes," including relief outside of the specific remedies mentioned in the statute or of that requested in a post-conviction relief petition. *Brock v. Baldwin*, 171 Or App 188, 196, 14 P3d 651 (2000), *rev den*, 332 Or 56 (2001). And, in cases such as these, "appropriate relief" may not always be a new trial on all counts. *See Shipman v. Gladden*, 253 Or 192, 204, 453 P2d 921 (1969) (PCHA authorizes granting "a delayed

---

[4] ORS 138.520 provides:

"The relief which a court may grant or order under ORS 138.510 to 138.680 shall include release, new trial, modification of sentence, and such other relief as may be proper and just. The court may also make supplementary orders to the relief granted, concerning such matters as rearraignment, retrial, custody and release on security."

appeal when necessary to rectify a substantial denial of constitutional rights"); *Hinton*, 342 Or at 231 (not error for the post-conviction court to award relief that was limited to reducing the petitioner's sentence or allowing petitioner to withdraw a no contest plea, but that left the petitioner's convictions intact).

Finally, we address the dissent's alternate path for reversal, which relies on the trial court, in the dissent's view, unambiguously recording, as its final word, "an 11 to 1 verdict." 350 Or App at 639-40 (Aoyagi, J., dissenting). The post-conviction court determined, however, that any "recording" *was* ambiguous and "not the final word" by the trial court. Because that finding is supported by the record, we are bound by it. *Green*, 357 Or at 312 ("A post-conviction court's findings of historical fact are binding on this court if there is evidence in the record to support them.").

Specifically, that statement by the trial court was in the middle of the discussion about the verdict and prior to the court reopening the record to correct an error in its recording of the verdict. That statement also came in response to an ambiguous statement by a juror (Juror #10) that a guilty verdict "on each of the 15 counts" was not his individual verdict, and before the jury foreperson (Juror #1) explained her verdict on the record. The post-conviction court explained that it was "simply not clear" which counts Juror #10 disagreed with, or if he even voted not guilty at all, "as his disagreement may have been with [Juror #1's] votes." Under these circumstances, we are bound by the post-conviction court's supported factual finding that that statement by the trial court was both ambiguous and not its final word. The dissent offers no support for the proposition that the trial court's statement has independent legal significance such that it would exist outside the realm of a factual finding subject to our standard of review.

Because petitioner has demonstrated a substantial denial of his constitutional rights in the proceedings giving rise to his conviction, we reverse.

Reversed and remanded for proceedings consistent with this opinion.

**AOYAGI, J.,** dissenting.

I agree that the post-conviction court erred in denying relief on petitioner's standalone *Ramos* claim but for an entirely different reason from the majority. I write separately not so much to explain how I would approach the case—although I necessarily will do that—but to express concerns about the majority approach. First, the majority approach is inconsistent with the text of ORS 138.530(1)(a) and our case law applying it. Second, the majority requires the post-conviction court to grant some form of relief on remand but leaves open what that relief might be, which is likely to cause confusion and inconsistency. Third, rather than explicitly overrule *Cam v. Pedro*, 346 Or App 635, 585 P3d 1145 (2026), *rev den*, unpublished order in case number S072740 (May 21, 2026), which would require explaining how *Cam* is "plainly wrong," *State v. Civil*, 283 Or App 395, 417, 388 P3d 1185 (2017), the majority silently overrules *Cam* by disregarding its stated holding and effectively rewriting it to mean something other than what it says. I discuss each concern in more detail below. As for the disposition of this case, on this particular record, I would conclude that petitioner is entitled to post-conviction relief and a new trial on all counts. Accordingly, I respectfully dissent.

## THE PROBLEMS WITH THE MAJORITY APPROACH

To briefly recap the key facts of this case: Petitioner was charged with 15 crimes. The jury was instructed that 10 or more votes was sufficient to find guilt. The jury returned guilty verdicts on all 15 counts. A partial poll of the jury revealed that somewhere between nine and 15 of the verdicts were nonunanimous. Juror #10 told the court that his or her individual verdict differed from the delivered verdict but did not identify on which counts it differed. Based on Juror #10, the trial court recorded "an 11 to 1 verdict." It later came to the court's attention that Juror #1 had misunderstood the polling question, which led to the court going back on the record and Juror #1 stating on the record that she had voted guilty on six counts and not guilty on nine counts.

Thus, the record shows that between nine and 15 of defendant's convictions were entered on nonunanimous guilty verdicts. It does not establish *how many* verdicts were nonunanimous, however, or *which* verdicts were nonunanimous. (If Juror #10 voted identically to Juror #1, then nine verdicts were nonunanimous; if not, then between 10 and 15 verdicts were nonunanimous. In either event, it is unknown which verdicts were nonunanimous.) The post-conviction court denied relief on that basis, reasoning that petitioner was "unable to meet his burden under *Watkins v. Ackley*[, 370 Or 604, 523 P3d 86 (2022),] to show that the verdicts against him [were] not unanimous," because, "on this record, it is not possible to determine which Counts were not unanimous."

The majority views the lack of information as to how many convictions were nonunanimous and which ones as not impeding post-conviction relief. I disagree and am with the post-conviction court on that issue.[1]

Like anyone bringing a standalone claim for post-conviction relief based on *Ramos v. Louisiana*, 590 US 83, 140 S Ct 1390, 206 L Ed 2d 583 (2020), petitioner seeks relief under ORS 138.530(1)(a). That statute provides that a "conviction" secured by unconstitutional means—specifically a substantial denial of the defendant's constitutional rights—is "void." ORS 138.530(1)(a) (requiring post-conviction relief to be granted when the petitioner establishes "[a] substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void"); *Watkins*, 370 Or at 623 (emphasizing that the denial of constitutional rights must be "substantial," not "minor" or "technical").

The legislature's description of the "conviction" as what is void under ORS 138.530(1)(a) appears to be

_____

[1] As I will explain later, because petitioner's trial counsel requested a jury poll and the trial court recorded an 11-1 verdict on all counts, I would conclude that petitioner is entitled to post-conviction relief and a new trial on all counts, even if the trial court made an error in recording the verdicts. That is a fluke of this case, however, and does not change my fundamental disagreement with the majority as to the nature of post-conviction relief and whether it is conviction specific.

intentional. The other three bases for post-conviction relief are similarly specific in their use of language, with ORS 138.530(1)(b) requiring relief if the judgment was entered without jurisdiction, ORS 138.530(1)(c) requiring relief if the sentence is unlawful, and ORS 138.530(1)(d) requiring relief if the petitioner was convicted of violating an unconstitutional statute.[2] The majority brushes off those differences in the legislature's chosen language as irrelevant to the legislative intent. *See* 350 Or App at 626-27 (majority opinion). I disagree. "Ordinarily, when the legislature uses different terms, we assume that the legislature intends those terms to have different meanings." *Norwood v. Premo*, 287 Or App 443, 451, 403 P3d 502, *rev den*, 362 Or 300 (2017). There is no reason to assume that the differences in language are irrelevant here. ORS 138.530(1)(a) expressly recognizes "the conviction" as void.

Consistent with the language of ORS 138.530(1)(a), Oregon courts have always tied post-conviction relief to individual convictions. To my knowledge, all existing post-conviction case law holding a petitioner to be entitled to post-conviction relief under ORS 138.530(1)(a) ties that relief to one or more specific convictions.

For example, when addressing ineffective and inadequate assistance of counsel claims, we routinely limit post-conviction relief to those convictions that were affected by the unconstitutional assistance. *Burcham v. Franke*, 265 Or App 300, 320, 335 P3d 298 (2014) ("[W]hen a petitioner is convicted of multiple counts, a petitioner is not entitled to relief on those counts that his or her counsel's constitutional inadequacy had no tendency to affect."); *see*, *e.g., id*. at 321-22 (holding that the post-conviction court erred in reversing four of seven convictions, where counsel's inadequacy did not

---

[2] *See* ORS 138.530(1)(b) (requiring post-conviction relief to be granted if the petitioner establishes "[l]ack of jurisdiction of the court to impose *the judgment* rendered upon petitioner's conviction" (emphasis added)); ORS 138.530(1)(c) (requiring post-conviction relief to be granted if the petitioner establishes a *"[s]entence* in excess of, or otherwise not in accordance with, the sentence authorized by law for the crime of which petitioner was convicted; or unconstitutionality of such sentence" (emphasis added)); ORS 138.530(1)(d) (requiring post-conviction relief to be granted if the petitioner establishes "[u]nconstitutionality of *the statute* making criminal the acts for which petitioner was convicted" (emphasis added)).

prejudice those convictions); *McMillan v. Kelly*, 304 Or App 299, 328, 467 P3d 791 (2020) (the petitioner was entitled to relief on 10 of 12 convictions); *Galloway v. Nooth*, 247 Or App 164, 166, 268 P3d 736 (2011) (the petitioner was entitled to relief on some convictions and not others); *Bogle v. Armenakis*, 172 Or App 55, 67, 18 P3d 390 (2001) (the petitioner was entitled to relief on five of 12 convictions). That makes perfect sense, given that ORS 138.530(1)(a) provides for relief only when a "conviction" is "void" due to being secured by unconstitutional means.

More importantly, with regard to standalone *Ramos* claims in particular, we have consistently limited post-conviction relief to those convictions that were entered on a nonunanimous verdict. In *Ramos*, the United States Supreme Court held that the Sixth Amendment "requires a unanimous verdict to support a conviction." 590 US at 93; *see also State v. Ulery*, 366 Or 500, 503, 464 P3d 1123 (2020) (recognizing that it was obvious error under *Ramos* to "receiv[e] the jury's nonunanimous guilty verdicts"). The Oregon Supreme Court recognized a standalone claim for post-conviction relief based on *Ramos* in *Watkins*. Describing the "import" of *Ramos* as "undeniable," the court took as a given that "convicting a defendant on a nonunanimous jury verdict amounts to a 'substantial denial in the proceedings resulting in petitioner's conviction * * * of petitioner's rights under the Constitution of the United States * * * which denial rendered the conviction void[.]'" *Watkins*, 370 Or at 607, 610 (quoting ORS 138.530(1)(a) (ellipses in *Watkins*; footnote omitted)). It then proceeded to address retroactivity, ultimately holding that post-conviction relief is available even for convictions that became final before *Ramos* was decided. *Id*. at 633. The court explained that "convicting the defendant on anything less than a unanimous guilty verdict violates our sense of what is fundamentally fair in a criminal proceeding" and that "[a] constitutional violation of that magnitude 'render[s] the conviction void' within the meaning of ORS 138.530 (1)(a)—even if it is raised after the post-conviction petitioner's conviction became final." *Id*. (second brackets in *Watkins*).

Under *Watkins*, if all of a petitioner's convictions were entered on nonunanimous verdicts, the petitioner

is entitled to post-conviction relief on all the convictions. *Guerrero-Perez v. Kelly*, 370 Or 823, 825, 525 P3d 1237 (2023) (holding that, where "each" of the petitioner's convictions was entered on a nonunanimous jury verdict, he was "entitled to post-conviction relief on each of his convictions"). If less than all the convictions were entered on nonunanimous verdicts, then the petitioner is entitled to post-conviction relief only as to those convictions entered on nonunanimous verdicts. *Jones v. Brown*, 370 Or 649, 652, 523 P3d 82 (2022) (holding that, where the petitioner was convicted of seven crimes, and three of the convictions were entered on nonunanimous jury verdicts, "the post-conviction court erred in denying relief as to petitioner's three convictions that were entered on nonunanimous verdicts" (footnote omitted)); *see also, e.g.*, *Manning v. Kelly*, 325 Or App 31, 34, 528 P3d 311 (2023) (holding that, where the petitioner was convicted of six crimes, and three of the convictions were entered on nonunanimous jury verdicts, he was entitled to relief on those three convictions).

The Supreme Court has never addressed the availability of post-conviction relief in cases *without* a definitive jury poll. This court has done so, however, first in a case with no jury poll and, later, in a case like this one with an incomplete poll.

In *Mandell v. Miller*, 326 Or App 807, 808, 533 P3d 815, *rev den*, 371 Or 476 (2023), the petitioner was convicted of two crimes by a jury instructed that only 10 jurors needed to agree on guilt. No one requested a poll, so the trial record was silent as to the jurors' votes on each count. *Id*. After *Ramos* was decided, the petitioner sought post-conviction relief, asserting a standalone *Ramos* claim. *Id*. at 809. We affirmed the denial of relief. *Id*. at 810. We explained that the petitioner bore the burden of proof and had failed to prove that either of his convictions was entered on a nonunanimous verdict. *Id*. We acknowledged evidence in the record that "approximately two thirds of jury trials from 2001 to 2018 included at least one nonunanimous conviction" but reasoned that "such general statistics do not indicate that either—let alone both—of the verdicts in petitioner's trial were actually nonunanimous." *Id*. (emphasis omitted).

        In deciding to affirm, we were guided in part by Oregon Supreme Court case law applying *Ramos* in direct criminal appeals, particularly *State v. Dilallo*, 367 Or 340, 478 P3d 509 (2020). *Mandell*, 326 Or App at 810. The defendant in *Dilallo* was convicted of one count of delivery of methamphetamine. *Dilallo*, 367 Or at 342-43. On direct appeal, he assigned error to the jury instruction on nonunanimity. *Id*. at 343. He had not objected to that instruction, so appellate review was limited to "plain error," and the jury had not been polled, so the jurors' votes were unknown. *Id*. at 342-43. The Supreme Court held that the trial court had plainly erred in its instruction to the jury, but it declined to exercise its discretion to correct the error, because it was concerned that reversing the defendant's conviction in such circumstances would result in an inequitable "anomaly" by effectively rewarding the defendant for not obtaining a jury poll:

> "[R]eversal of defendant's conviction would lead to an anomaly: many defendants in cases where the jury was polled will have their convictions affirmed if the poll revealed that the verdicts were unanimous, but defendant would be guaranteed a reversal, regardless of whether the jury reached a unanimous verdict, because of a deficiency in the record that could have been avoided if he had objected. As a result, defendant's failure to comply with the preservation requirement would not only be excused, it would be rewarded."

*Id*. at 348. The court noted that "the information that would have been revealed by a jury poll would not only be important, it would likely be dispositive." *Id*. at 347.

        We viewed "[t]he flaw in the record in *Dilallo*" as "equally present" in *Mandell* and concluded that "a reversal [in *Mandell*] would create that same anomaly." *Mandell*, 326 Or App at 811. That is, granting post-conviction relief to "petitioners who were convicted by unpolled juries" would result in their receiving relief on all their convictions, both valid and void, "while petitioners whose juries were polled and revealed to be unanimous would, in effect, be in a worse position than if they had not raised the issue at all." *Id*. *Mandell* thus forecloses post-conviction relief on a standalone *Ramos* claim in the absence of a jury poll—or

equivalent information obtained through a post-conviction investigation. That is, absent a jury poll or equivalent information, a petitioner cannot meet their burden of proof on a standalone *Ramos* claim.

We next considered the availability of post-conviction relief in the absence of a definitive jury poll in *Cam*. In that case, the petitioner was charged with 56 crimes, and the jury—having been instructed that only 10 jurors needed to agree on guilt—found him guilty on 54 counts, hung on one count, and acquitted him on one count. *Cam*, 346 Or App at 637. The jury was not properly polled, but the trial court did ask the presiding juror whether the verdicts were unanimous or nonunanimous, and the presiding juror answered, "Both." *Id*. at 639. The petitioner later sought post-conviction relief, asserting that he was "entitled to reversal of all his convictions because the record shows that one or more of those convictions was based on a nonunanimous jury verdict." *Id*. at 638. We affirmed the denial of relief. *Id*. at 637. We noted that, under existing case law, to obtain relief on a standalone *Ramos* claim, the petitioner had the burden to prove nonunanimity (by a preponderance of the evidence). *Id*. at 639. We then proceeded to explain that it was not enough merely to establish that one or more unspecified convictions was likely based on a nonunanimous verdict but that, rather, nonunanimity had to be established on "a verdict-by-verdict basis." *See id*. at 640.

Although it was "likely" that at least one of the *Cam* petitioner's convictions was entered on a nonunanimous verdict, "[t]he problem for petitioner [was] that there [was] no way to know how many of the verdicts were nonunanimous or, more importantly, *which one(s)*." *Id*. (emphasis in original). That was a problem because the petitioner was entitled to post-conviction relief on any "specific convictions" entered on nonunanimous verdicts, but he was not entitled to relief on any valid convictions entered on unanimous verdicts, and, without a proper jury poll, it was impossible to know which convictions fell into each category. *Id*. The availability of relief necessarily had to be "assessed on a verdict-by-verdict basis." *Id*. And, as with the situations in *Dilallo* and *Mandell*, "[i]t would be inequitable for petitioner

to fare better for having not requested a jury poll"—that is, a proper jury poll—"than if he had requested one." *Id.*

That brings me to the present case. I have three related concerns about the majority opinion in this case.

First, the majority approach is inconsistent with the text of ORS 138.530(1)(a) and our case law applying it, for the reasons that I have described. ORS 138.530(1)(a) provides that a "conviction" secured by unconstitutional means is "void," and we have historically limited post-conviction relief to the specific convictions that were rendered void by a substantial constitutional violation at trial.

Second, the majority opinion provides almost no guidance to post-conviction courts regarding how to fashion a remedy for standalone *Ramos* claims when the court does not know which convictions are void. That not only leaves the court in this case with inadequate guidance on remand, but it virtually ensures inconsistent results among cases. Although it is generally true that post-conviction courts have broad discretion in fashioning post-conviction relief, *see* 350 Or App at 628 (majority opinion), that discretion does not extend to reversing valid convictions. And, as to convictions that are void because they were entered on a nonunanimous verdict, the only effective remedy is to reverse those convictions and grant a new trial. That remedy is easy to provide when post-conviction relief is tied to specific convictions. But if a petitioner need only prove that *some* conviction is nonunanimous, without establishing which one or how many, fashioning a remedy quickly becomes arbitrary.

Not knowing which convictions are void (and not having any meaningful guidance from this court as to how to fashion an appropriate remedy in the absence of that information), a post-conviction court might reverse all the convictions, thereby reversing not only the void ones entered on nonunanimous verdicts but also the valid ones entered on unanimous verdicts—creating the very "anomaly" that *Dilallo* and *Mandell* sought to avoid. Or the post-conviction court might try to guess which convictions are void and reverse those, recognizing that it will almost certainly guess wrong. Or the post-conviction court might just randomly

pick some convictions to reverse. In this particular case, petitioner happens to have been convicted of 15 counts of the same crime against the same victim, so the randomness may not be quite as troubling, but it is still random. Because of the incomplete jury poll, there is no way to know how many of petitioner's convictions were entered on nonunanimous verdicts—only that it is either 9, 10, 11, 12, 13, 14, or 15 convictions. There is also no way to know *which* convictions were entered on nonunanimous verdicts. That is no small thing. A post-conviction petitioner is not entitled to relief from valid convictions. Moreover, counts may vary wildly in terms of seriousness and in terms of the strength of the state's evidence. How is a post-conviction court to pick which convictions to reverse absent knowing which ones are void?

Theoretically, the post-conviction court could try to contact the jurors, or order the parties to do so, in the hopes of figuring out how many verdicts, and which ones, were nonunanimous. It seems strange to require the court to oversee or order an investigation, however, when there is already a procedure for petitioners to seek that information *before* the post-conviction trial. *See* ORS 138.585 (providing procedure to seek confidential jury records and move to contact jurors). The bigger problem, however, is that an investigation is not itself relief. Jurors may be impossible to locate, unwilling to talk, or not remember the relevant information. The post-conviction court is then back at square one, needing to arbitrarily pick how many and which convictions to reverse because it does not know which ones are void and which ones are valid.

Finally, my third concern is that the majority is silently overruling *Cam* and thus sidestepping our normal procedure for overruling existing precedent, which requires explaining how it is "plainly wrong." *Civil*, 283 Or App at 417. The majority does so by ignoring the express reasoning of *Cam* and distinguishing *Cam* based on a fact that was irrelevant to its holding, *i.e.*, the one acquittal. *See* 350 Or App at 625-26 (majority opinion). It is true that there was one acquittal in *Cam*, but the burden of proof in a post-conviction case is only a preponderance of the evidence, ORS 138.620(2), and we expressly stated in *Cam* that the record

made it "likely" that at least one conviction was nonunanimous, 346 Or App at 640. The remote possibility that the jury was unanimous on the 54 guilty verdicts and nonunanimous only on the one count of acquittal played no part in our reasoning. *See Cam*, 346 Or App at 640. To the contrary, we expressly stated that "[t]he problem" that prevented the petitioner from obtaining post-conviction relief was "that there is no way to know how many of the verdicts were nonunanimous or, more importantly, *which one(s)*," and that nonunanimity necessarily had to be established on a "verdict-by-verdict basis." *Id.* (emphasis in original).

The majority ignores the stated reasoning and holding of *Cam* and superimposes different reasoning to explain why *it* would have denied relief in *Cam*, which is based on the one acquittal. 350 Or App at 625-26 (majority opinion). In doing so, the majority silently overrules *Cam*, without explaining how *Cam* is "plainly wrong" under *Civil*. I would adhere to *Cam*, because I do not believe it is "plainly wrong," such that it is properly a matter for the Supreme Court at this point, but, at a minimum, we should be transparent when we overrule our own precedent.

## AN ALTERNATIVE PATH TO REVERSAL

Having explained why I disagree with the majority opinion, I conclude by explaining how I would resolve this particular case.

As in *Cam*, the trial court in this case conducted an incomplete jury poll after receiving the verdicts. Unlike in *Cam*, the record here shows that it was petitioner's counsel who requested the poll and that, upon hearing from Juror #10, the court recorded "an 11 to 1 verdict." At that point, in my view, petitioner was entitled to rely on the record made by the court as establishing an 11-1 verdict on all counts.

Petitioner made that argument to the post-conviction court, which rejected it, reasoning that recording an 11-1 verdict "was not the final word by the Court and is ambiguous in light of" what Juror #10 said when polled, which makes it "simply not clear which counts [Juror #10] disagreed with" and whether "they were the same or different from [Juror #1's]." Although I agree that the record does not conclusively

establish as a factual matter that all 15 of the jury's verdicts were nonunanimous, I disagree that the verdict recorded by the court was *ambiguous*. The trial court expressly recorded "an 11 to 1 verdict" without limitation. The trial court may have misunderstood Juror #10 or otherwise erred in recording an 11-1 verdict across the board based on the information that it had. But that does not make what the court said ambiguous. If the state thought it was incorrect or ambiguous, it could have objected. Petitioner had no reason to object.

The majority takes the view that we are "bound" by the post-conviction court's "finding" that the recorded verdict was "ambiguous." 350 Or App at 629 (majority opinion). But whether a statement is ambiguous is normally a question of law, not fact; it is only the resolution of an ambiguity, once deemed to exist, that involves factfinding. *See, e.g.*, *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995) (whether a contract term is ambiguous is "a question of law"); *Carroll v. Lane County*, 340 Or App 514, 523, 572 P3d 332 (2025) (same for real property deeds); *Baertlein and Stocks*, 303 Or App 51, 61, 464 P3d 433 (2020) (same for stipulated judgments); *see also Interstate Roofing, Inc. v. Springville Corp.*, 347 Or 144, 159, 218 P3d 113 (2009) ("[I]f a judgment document does not unambiguously manifest the concluding decision on a claim, an appellate court cannot address that defect by consulting the record to determine what the trial court subjectively intended." (Footnote omitted.)).

In my view, for purposes of a standalone *Ramos* claim, a petitioner should be able to rely on the verdict recorded by the trial court. It is the receipt of the nonunanimous guilty verdict that violates the Sixth Amendment. *Ulery*, 366 Or at 503 (recognizing that it was obvious error under *Ramos* to "receiv[e] the jury's nonunanimous guilty verdicts"). For that reason, I would conclude that petitioner is entitled to post-conviction relief—that is, a new trial—on all 15 convictions. I disagree with remanding to the post-conviction court to grant unspecified relief on unspecified convictions.

I respectfully dissent.

Shorr, J., joins in this dissent.